Filed 11/29/22 Mooney v. Argus Realty Investors CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FOURTH APPELLATE DISTRICT

### DIVISION THREE

|  |  |
|---|---|
| LORELEI MOONEY, as Trustee, etc., et al.,<br><br>    Plaintiffs and Appellants,<br><br>        v.<br><br>ARGUS REALTY INVESTORS et al.,<br><br>    Defendants and Respondents. | G060076<br><br>(Super. Ct. No. JCCP 4811)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Peter J. Wilson, Judge. Affirmed.

Catanzarite Law Corporation, Kenneth J. Catanzarite, Nicole M. Catanzarite-Woodward and Eric V. Anderton for Plaintiffs and Appellants.

Tencersherman, Philip C. Tencer and Jessica L. Mulvaney for Defendants and Respondents.

Lorelei Mooney as trustee and on behalf of the Herbert and Helen Schweiger Trust, ARI-DFW East & West 9, L.P., Gary Lamm, and James Mieuli (Plaintiffs) are a group of investors who filed a lawsuit in 2014 on behalf of themselves and a putative class. Plaintiffs appeal from an order of dismissal based on their failure to bring the action to trial within five years after it was commenced. (Code Civ. Proc., § 583.310.)[1] Plaintiffs allege that due to several stays of the proceedings, the time to bring the case to trial should have been extended. Assuming that we would agree with this argument, Plaintiffs raise the additional argument the court should not have sustained defendants' demurrer to their third amended complaint. We need not reach this issue, however, because we conclude the trial court correctly dismissed the lawsuit. We affirm the judgment.

FACTS

Plaintiffs' lawsuit (the Mooney Action) initially named over 20 defendants, who they alleged were involved in a fraudulent tenant-in-common investment scheme designed to wrongfully induce the class members to sell their real property, invest in real property, and defer capital gains taxes via these transactions pursuant to Internal Revenue Code section 1031. Over time, several defendants were dismissed from the case and all that remained in 2021 were Argus Realty Investors, L.P., ARI Financial Services, Argus Realty, L.L.C., ARI Commercial Properties, Inc., Richard Gee, Maxwell B. Drever, Timothy E. Snodgrass, William Brain Candler, ARI-DFW, East & West, L.P., ARI-Barrett Office Center, LLC, ARI-Atrium Office Building, LLC, ARI-Powers Ferry Office Park, LLC, ARI Copley Business Center, LLC, ARI-Shoreview Corporate Center, LLC, ARI-Securities Centre One & Two, LLC, and ARI-Meridian Plaza, LLC. For ease of reading, we will refer collectively to these parties as Defendants.

---

[1] All further statutory references are to the Code of Civil Procedure, unless otherwise indicated.

Because the trial court's dismissal of these Defendants was based on Plaintiffs' failure to bring the action to trial within the statutory time period, we discuss only the relevant facts relating to the procedures employed after the filing of the lawsuit, not the facts that underlie Plaintiffs' complaint or Defendants' affirmative defenses.

I. *The Complaint and the First Stay Order*

Plaintiffs filed the Mooney Action on February 3, 2014, in Los Angeles. The following month, on March 26, 2014, a Los Angeles Superior Court judge ruled the case was complex. The court issued an order stating, "By this order, the court stays the case, except for service of the summons and complaint. The stay continues at least until the initial status conference . . . set for May 2, 2014 . . . in this department. At least 10 days prior to the initial status conference, counsel for all parties must discuss the issues set forth in the initial status conference order issued this date. The initial status conference order is to help the court and the parties manage this complex case by developing an orderly schedule for briefing, discovery, and court hearings. The parties are informally encouraged to exchange documents and information as may be useful for case evaluation. [¶] Responsive pleadings shall not be filed until further order of the court. Parties must file a notice of appearance in lieu of an answer or other responsive pleading. . . . Nothing in this order stays the time for filing an affidavit of prejudice pursuant to . . . section 170.6."[2]

On April 1, 2014, two parties in the action filed a petition to compel arbitration and to stay all further proceedings. Thereafter, the court continued the scheduled May status conference to June 23, 2014.

---

[2] In this opinion, for ease of reading, we have fixed grammatical errors and omitted unnecessary capitalization when quoting from the parties' documents and court rulings.

## II. *The Stay Order Continued and Modified*

On June 23, 2014, the court held the status conference and ordered Defendants to prepare a notice of ruling. The ruling stated the court held a status conference to discuss the possible coordination of the Mooney Action with eight lawsuits pending in the Orange County Superior Court. The court determined the lawsuits should be coordinated and it ordered one of the parties to prepare the necessary documents. It also ruled, "The Mooney Action remains stayed pending further order of the Court. There shall be no responsive pleadings or discovery filed or served pending the stay." The court scheduled a non-appearance status conference on October 20, 2014.

On January 14, 2015, the Los Angeles Superior Court held a non-appearance review hearing. It reviewed the parties' joint status report indicating the petition for coordination was still pending. It continued the matter to March 17, 2015.

The Orange County Superior Court granted the petition for coordination on February 4, 2015. Thereafter, Plaintiffs' counsel filed a peremptory challenge as to Judge Gail Andler, and in March 2015, the matter was reassigned to Judge Kim Dunning.

## III. *The Stay Order Again Continued and Modified*

The court (in Orange County) held a status conference on April 22, 2015. The notice of ruling announced three orders in the coordinated action. First, the court granted an unopposed motion for good faith settlement. Second, it set a status conference for May 27, 2015. Third, the court continued the stay originally ordered by the Los Angeles County trial judge "other than for Plaintiffs' ability to file a first amended complaint as a matter of right, alternatively a motion for leave to file a first amended complaint and/or a dismissal of any defendants." The status conference was continued several times, sometimes by the court and twice by Plaintiffs.

On January 11, 2017, the court held a status conference. The court's minute order stated Plaintiffs' counsel intended to "narrow down the case by filing requests for dismissals without prejudice as to certain defendants by January 17, 2017,

4

and then filing a first amended complaint" (FAC) by February 13, 2017. The court noted Plaintiffs' counsel stated the FAC would be against certain defendants, and it directed counsel to "confer with the attorneys that represent the defendants they intend to pursue by amended complaint, whether or not it is a matter of right." The court ordered counsel to "circulate the proposed amended complaint with a redline version to Defendants' counsel." Finally, the court noted the parties indicated some defendants had reached a settlement with Plaintiffs and "parties shall be in a position to dismiss within 60 days."

IV. *Stay Lifted*

On August 30, 2017, the court held a status conference. The court ordered "the stay lifted with respect solely to . . . Catanzarite, Plaintiffs' counsel filing an amended pleading in the *Mooney* case and any responsive pleadings by the defendants." The court directed Plaintiffs' counsel to prepare the amended pleadings and "disseminate a draft to allow all of the parties to review" it before it was filed. It ordered the parties to meet and confer to discuss the amended pleadings.

The court gave Plaintiffs a deadline of September 18, 2017, to provide all the parties with a copy of the proposed FAC, and specified the pleading must be filed by October 2, 2017. If Plaintiffs failed to meet their deadline, the court gave Defendants the option of filing responses to the original complaint by October 30, 2017. It continued the status conference to December 6, 2017. Plaintiffs filed their FAC on November 27, 2017.

V. *Pre-trial Litigation Activity*

In early 2019, Plaintiffs filed a third amended complaint. Defendants filed a demurrer, and Plaintiffs filed an objection to it. The court continued the hearing on the demurrer to November 2019. That same month, Defendants filed a response to the list of facts, and provided court-ordered documents and exhibit lists. Plaintiffs filed an omnibus objection.

5

The court continued the hearing on the demurrer to January 2020. When the court heard the matter, it sustained the demurrer to the seventh and fourteenth causes of action without leave to amend. It sustained the demurrer to all the other causes of action with leave to amend, specifying: "Leave to amend is restricted to claims based on and/or arising out of the alleged lack of a real estate broker's license, as the court finds that all other asserted claims are time-barred." It set a status conference for April 17, 2020, and indicated the fourth amended complaint must be served and filed by February 21, 2020. Plaintiffs filed a fourth amended complaint on February 24, 2020.

VI. *Motion to Dismiss*

On December 28, 2020, Defendants filed a motion to dismiss for failure to bring the action to trial within five years. They cited case authority holding that the trial court, in computing the five-year period, must exclude time during which all the proceedings in the action were stayed. Defendants maintained that in their case, no stay order tolled the five-year period because the court ordered partial not complete stays of the case.

Plaintiffs opposed the motion, arguing the court's initial stay order was continued from March 2014 through August 2017, and they were not permitted to conduct discovery or move the case toward trial. They presented evidence that by the time Plaintiffs were allowed to amend the complaint, several appeals were pending making this option impractical.

The court dismissed the case with prejudice. It stated on the record that it was mindful of the "extreme nature" of the dismissal statute, but after following the Supreme Court's clearly defined distinctions between partial and complete stays, the action must be dismissed. The trial court noted Plaintiffs effectively stood by "while the clock ticked and [made] no effort during these partial stays to do anything about the partial stays or anything else."

6

In its tentative ruling, the court determined the five-year period was only tolled while the coordination motion was pending from November 26, 2014, to March 12, 2015, for a total of 106 days. The court noted all other stays in the case were partial, and Plaintiffs failed to establish impossibility, impracticability, or futility in continuing to litigate the action during those periods.

DISCUSSION

An action is commenced when a plaintiff files the original complaint. (*Bruns v. E-Commerce Exchange, Inc.* (2011) 51 Cal.4th 717, 723 (*Bruns*).) For an action filed February 3, 2014, the last day of the five-year statutory deadline to bring the matter to trial was February 2, 2019. The parties do not dispute this lawsuit was not brought to trial within five years of when Plaintiffs filed the original compliant. Instead, Plaintiffs assert several years should be excluded from the calculation pursuant to section 583.340, subdivisions (b) and (c). They assert the deadline was also tolled due to a COVID-19 Judicial Council emergency rule. (Cal. Rules of Court, appen. I, emergency rule 10(a) (Emergency Rule 10(a)).) We conclude that although the deadline was extended six months by Emergency Rule 10(a), and tolled briefly during coordination proceedings, the court did not abuse its discretion by dismissing the action on February 19, 2021, for failure to prosecute before the extended deadline (the five-year, six-month deadline was August 3, 2019).

I. *Applicable Law*

Section 583.310 provides, "An action shall be brought to trial within five years after the action is commenced against the defendant." Otherwise, "An action shall be dismissed by the court on its own motion or on motion of the defendant, after notice to the parties." (§ 583.360, subd. (a).) "The requirements of this article are mandatory and are not subject to extension, excuse, or exception except as expressly provided by statute." (*Id.*, subd. (b).)

7

In calculating the time by which a case must be brought to trial, the court must exclude time when: "(a) The jurisdiction of the court to try the action was suspended. [¶] (b) Prosecution or trial of the action was stayed or enjoined. [¶] (c) Bringing the action to trial, for any other reason, was impossible, impracticable, or futile." (§ 583.340.)

Our Supreme Court in *Bruns* discussed the proper interpretation of subdivision (b) of section 583.340, concluding it "applies only when a stay encompasses *all* proceedings in the action and does not include partial stays . . . ." (*Bruns, supra,* 51 Cal.4th at p. 723.) The court determined that, in isolation section 585.340, subdivision (b)'s language is ambiguous and to determine what type of stay "operates to toll the running of the five-year period by which a case must be brought to trial" it "must read subdivision (b) together with subdivision (c)." (*Bruns, supra,* 51 Cal.4th at p. 726.)

"When the statute is read as a whole, it becomes apparent that subdivision (b) contemplates a bright-line, nondiscretionary rule that excludes from the time in which a plaintiff must bring a case to trial only that time during which all the proceedings in an action are stayed. Subdivision (c) gives the trial court discretion to exclude additional periods, including periods when partial stays were in place, when the court concludes that bringing the action to trial was 'impossible, impracticable, or futile.' Obviously, if a complete stay is in effect, bringing the action to trial is impossible. It makes sense for the Legislature to state a bright-line rule in this situation. The effect of a partial stay, however, can vary from stay to stay and from case to case. A partial stay might, or might not, make it 'impossible, impracticable, or futile' to bring the action to trial. As discussed below, when the effect of a partial stay is raised by a plaintiff under section 583.340, the trial court must determine whether or not subdivision (c) applies to that partial stay." (*Bruns, supra,* 51 Cal.4th at p. 726.)

Our Supreme Court further explained section 583.340, subdivision (c), requires the trial court to "determine what is impossible, impracticable, or futile 'in light

8

of all the circumstances in the individual case, including the acts and conduct of the parties and the nature of the proceedings themselves. [Citations.]" (*Bruns, supra,* 51 Cal.4th at p. 730.) "The critical factor in applying these exceptions to a given factual situation is whether the plaintiff exercised reasonable diligence in prosecuting his or her case.' [Citations.]" (*Ibid.*)

"A plaintiff's reasonable diligence alone does not preclude involuntary dismissal; it is simply one factor for assessing the existing exceptions of impossibility, impracticability, or futility. [Citation.] '"[E]very period of time during which the plaintiff does not have it within his power to bring the case to trial is not to be excluded in making the computation." [Citation.]' [Citation.] 'Time consumed by the delay caused by ordinary incidents of proceedings, like disposition of demurrer, amendment of pleadings, and the normal time of waiting for a place on the court's calendar are not within the contemplation of these exceptions.' [Citation.] Determining whether the subdivision (c) exception applies requires a fact-sensitive inquiry and depends 'on the obstacles faced by the plaintiff in prosecuting the action and the plaintiff's exercise of reasonable diligence in overcoming those obstacles.' [Citation.] '"[I]mpracticability and futility"' involve a determination of "'*excessive* and *unreasonable* difficulty or expense,'" in light of all the circumstances of the particular case.' [Citation.]" (*Bruns, supra,* 51 Cal.4th at p. 731.)

"The question of impossibility, impracticability, or futility is best resolved by the trial court, which 'is in the most advantageous position to evaluate these diverse factual matters in the first instance.' [Citation.] The plaintiff bears the burden of proving that the circumstances warrant application of the section 583.340[, subdivision] (c) exception. [Citation.] . . . The trial court has discretion to determine whether that exception applies, and its decision will be upheld unless the plaintiff has proved that the trial court abused its discretion. [Citations.]" (*Bruns, supra,* 51 Cal.4th at p. 731.)

9

In *Gaines v. Fidelity National Title Ins. Co.* (2016) 62 Cal.4th 1081, 1087 (*Gaines*), the Supreme Court considered in more depth what differentiates a complete from a partial stay. It determined this specific question must be reviewed de novo "because it does not hinge on the resolution of factual questions concerning credibility of extrinsic evidence." (*Id.* at p. 1092.)

The *Gaines* case involved an order "entered pursuant to the parties' agreement" that struck the trial date "and 'stayed' the proceedings while the parties engaged in mediation and completed all outstanding discovery." (*Gaines, supra,* 62 Cal.4th. at p. 1087.) The Supreme Court determined the trial court's "order striking the trial date at the parties' request should be construed as a continuance of the trial of the action rather than a stay." (*Ibid.*) It offered the following explanation: "The trial was not continued indefinitely. Instead, the date was struck pending two defined contingencies: a definite 90-day period for mediation to occur and a 120-day stay of the proceedings. Neither of the contingencies was extrinsic to the litigation. Both were agreed to by the parties and totally within their control. Neither necessitated a stay of the trial, which was over five months distant. . . . Although the order did not set a new trial date, it identified a date certain to resume proceedings by calendaring a July 16, 2008 trial-setting conference. This stipulated trial postponement, agreed to by the parties and not occasioned by an extrinsic proceeding, court order, or law barring action, does not qualify for automatic tolling." (*Id.* at pp. 1093-1094.)

The Supreme Court referred to its prior holding in *Bruns* that "complete stays '"stop the prosecution of the action altogether."' [Citation]" (*Gaines, supra,* 62 Cal.4th at p. 1094.) The court reasoned: "This order provided that the 'case is stayed for a period of 120 days.' Nonetheless, it contemplated that the case would move forward during the relevant period in two respects: The parties were ordered to respond to previously served and outstanding discovery and to participate in mediation in an effort to settle the lawsuit." (*Ibid.*) "'The term "prosecution" is sufficiently

10

comprehensive to include every step in an action from its commencement to its final determination.' [Citation.] Discovery constitutes a step in the prosecution of the action. [Citation.] Because the order required the parties to comply with previously served and outstanding written discovery, it did not "'stop the prosecution of the action altogether.'" [Citation.]" (*Id.* at pp. 1094-1095.)

The court rejected the argument that it mattered whether or not the parties exchanged discovery during the stay, concluding the parties' inaction does not recharacterize the court's order permitting discovery. (*Gaines, supra,* 62 Cal.4th at p. 1096.) In addition, the court determined the parties' agreement to submit the action to mediation was further evidence the stay was partial. It concluded that unlike arbitration, "mediation is not an event *outside* the lawsuit; it is one means by which a settlement *of the lawsuit* may be reached. [Citations.] It does not effectively abate the litigation "'as to all issues, as to all causes of action, and as to all parties.'" [Citation.]" (*Ibid*.)

II. *Deadline Automatically Tolled by Emergency Rule 10(a)*

Following the outbreak of COVID-19 in March 2020, the Judicial Council adopted an emergency rule that tolled the deadlines to bring civil actions to trial under sections 583.310 and 583.320. Specifically, Emergency rule 10(a), effective April 6, 2020, provides in pertinent part as follows: "Notwithstanding any other law, including . . . section 583.310, for all civil actions filed on or before April 6, 2020, the time in which to bring the action to trial is extended by six months for a total time of five years and six months. . . ."

III. *Analysis*

In their briefing, Plaintiffs assert the court should have tolled the deadline to bring a case to trial during two separate time periods. The "First Period" was from June 23, 2014, through April 22, 2015 (303 days). The "Second Period" was from April 22, 2015, through to August 30, 2017 (861 days). Plaintiffs argue the time to prosecute

11

the case should have been tolled during these periods because the court ordered complete stays pursuant to section 583.340, subdivision (b), or alternatively, it was impossible to litigate the action during this time pursuant to section 583.340, subdivision (c). As will be discussed in more detail below, we affirm the trial court's conclusion the statute was not tolled during either period, except for a brief time during coordination proceedings. From 2014 to 2017 there was a partial stay in effect, which did not preclude Plaintiffs from moving forward with their case or from exercising reasonable diligence in taking steps towards bringing the matter to trial.

A. *The First Period—Not a Complete Stay*

Plaintiffs define the First Period as starting after the June 23, 2014, status conference, when the Los Angeles Superior court considered transferring and coordinating the Mooney Action with the other Orange County superior court cases. They maintain this period ended 303 days later when the Orange County superior court held a status conference on April 22, 2015. They assert that on June 23 2014, the court ordered the stay to facilitate coordination with the Orange County cases. Plaintiffs argue that because the court ordered there would be no responsive pleadings or discovery served during the stay, the court effectively halted all prosecution of the case, i.e., the court ordered a complete, not partial stay.

The argument fails because Plaintiffs have misconstrued the origin date of the first stay. At the June 23, 2014, status conference, the Los Angeles Superior Court *continued* the stay imposed by a different judge on March 26, 2014. The court ruled, "The Mooney Action *remains* stayed . . . ." It did not extinguish the prior stay in favor of completely new orders.

Thus, to understand the scope of the First Period's stay it is necessary to examine the original March 26, 2014, order. On that date, the trial court imposed a partial stay because it required the parties to engage in significant litigation-related activities. For example, the court noted the stay would not prevent Plaintiffs from

12

serving the summons and complaint and it ordered counsel to meet and confer about issues set forth in the initial status conference order. Specifically, the court directed the parties to help the court develop "an orderly schedule for briefing, discovery[,] and court hearings."

The parties were also "informally encouraged to exchange documents and information as may be useful for case evaluation." Defendants were ordered to file a notice of appearance in lieu of an answer or other responsive pleading. The court also noted the stay order would not toll the deadline for filing a section 170.6 affidavit of prejudice. As stated in *Bruns,* section 583.340, subdivision (b), "governs only complete stays that are 'used to stop the prosecution of the action altogether.'" (*Bruns, supra,* 51 Cal.4th at p. 730.) Exchanging documents, serving pleadings, working together to develop a litigation schedule, filing affidavits of prejudice, and filing a notice of appearance are all litigation activities considered a "'step in [the] action'" (*Gaines, supra,* 62 Cal.4th at p. 1095), and indicative of a partial rather than a complete stay.

A similar situation arose in *Warner Bros. Entertainment Inc. v. Superior Court* (2018) 29 Cal.App.5th 243 (*Warner Bros.*). In that case, plaintiffs maintained "the stay of responsive pleadings and discovery 'halt[ed] prosecution of the case altogether.'" (*Id.* at p. 255.) The court disagreed: "We find it impossible to conclude that an order requiring the parties to engage in significant litigation-related activities can nevertheless be considered to have stopped prosecution of the case altogether. As we have seen, the parties met and conferred on March 20, 2013; agreed to the exchange of various documents [citation]; prepared the joint report discussing numerous topics; and submitted the report to the court on April 8, 2013. These are significant litigation activities that occurred while other litigation activities (responsive pleadings and discovery) were stayed. [¶] Equally impossible is a conclusion that this initial stage of the litigation, during which the parties are compelled to focus on case management issues, is nevertheless not a "'step in [the] action'" [citation]. On the contrary, it seems to us this

period in the litigation is a step that contributes significantly to the advancement of a complex action to eventual resolution. The stay of responsive pleadings and formal discovery during this time effectively facilitates the parties' focus on case management issues, including multiple issues concerning how discovery is to be conducted. Plainly, this is a step—an important step—in the action. Plaintiffs have offered us no basis to conclude otherwise." (*Id.* at p. 257.)

We conclude there was only a partial stay in effect during the First Period. Pausing the time for responsive pleadings and formal discovery did not completely stop prosecution of the action as defined in section 584.340, subdivision (b). The March 16, 2014, stay order continued as modified on June 23, 2014, did not automatically toll the five years in which to prosecute an action.

B. *The Second Period—Not a Complete Stay*

Plaintiffs define the Second Period as lasting 861 days, from April 22, 2015, through to August 30, 2017. This period begins when a coordination trial judge in Orange County held its first status conference and ends when the court lifted the stay. Once again, we do not interpret the court's order as referring to a new or complete stay. The notice of ruling, prepared by Plaintiffs' counsel, stated the Orange County trial judge "*continued the stay* in the matter styled [for the Mooney Action in the Los Angeles Superior Court] other than for Plaintiffs' ability to file a first amended complaint as a matter of right, alternatively a motion for leave to file a first amended complaint and/or a dismissal of any defendants." (Italics added.) The court's clear intention was to keep the partial stay imposed by the Los Angeles trial judge before the case was transferred.

Plaintiffs believe the Second Period stay order was newly created in response to Defendants' request for a complete stay while some of the other coordinated cases were being appealed. This contention is not supported by the record. Plaintiffs' argument is based entirely on statements made in Defendants' status report, submitted before the hearing, not on the contents of a court order.

14

In their status review hearing report, Defendants advised Judge Dunning that the prior coordination trial judge (Judge Andler) sustained demurrers without leave to amend in seven of the coordinated actions in May 2014, and those appeals were still pending. Defendants explained that except for the lead case, the coordinated actions had not progressed to the discovery stage. Defendants asserted: "Due to the overlap of parties, properties and claims, the [appellate decisions in some of the coordinated actions] may prove dispositive of the claims in the Mooney Action. Accordingly, [Defendants] propose that this [c]ourt stay the Mooney Action pending resolution of the . . . appeals. A stay will maximize efficient use of the [c]ourt's and parties' time and resources and minimize the risk and disadvantage of inconsistent rulings."

We appreciate Defendants were advocating for a complete stay, however, there is nothing in the record indicating whether the court agreed or disagreed with them. If the court had intended to impose a complete stay in the Mooney Action, indefinitely halting litigation until the seven appeals completed, it could have easily said so in the order. Instead, the court simply *continued* the partial stay and invited Plaintiffs to file a FAC or dismiss some of the defendants. As mentioned, when a stay does not encompass all proceedings or "stop the action altogether" it is not a complete stay. (*Bruns, supra,* 51 Cal.4th at p. 730.)

Based on the plain language of the order, Judge Dunning's intention was for Plaintiffs to continue taking steps forward on the Mooney Action. This plan was reasonable given that the newly transferred Mooney Action was out of sync procedurally with the other coordinated actions. Some of the other lawsuits had progressed to where challenges were being made to second and third amended complaints.[3] According to

---

[3] In 2016, this court filed multiple unpublished opinions concerning the coordinated ARI Actions. (See, e.g., *Gee v. LaSalle Bank, N.A.* (June 23, 2016, G050844) [nonpub. opn.] (*Gee*); *ARI-SCC 3, LLC v. Burch & Company, Inc.* (June 23, 2016, G050847) [nonpub. opn.].) The Catanzarite Law Firm (Catanzarite) represented Plaintiffs in the majority of these cases/appeals.

15

Defendants' status report, at least one case had progressed to the discovery stage. We have no reason to speculate the court misspoke and intended there to be complete stay while the appeals were pending.

Alternatively, Plaintiffs argue their ability to file an amended complaint, without the court also giving Defendants the ability to demurrer or to respond, "is nothing more than an idle sidestep." They assert the FAC "leaves the case frozen at the same procedural point in time" and they could not advance the litigation. In addition, Plaintiffs claim for the first time they could not file an amended complaint because discovery was stayed. They assert the complaint could not be augmented with additional facts from discovery. These speculative arguments lack merit.

First, Plaintiffs did not try to file an amended complaint during the partial stay, and therefore, it cannot be said with any certainty the case would have been frozen in time. A new coordination trial judge was assigned to the case, and she specifically invited Plaintiffs to amend their pleadings.

Second, we reject Plaintiffs' assertion "the only possible option that would have facilitated forward momentum in the case would have been for [them] to abandon claims overlapped with the plaintiffs in [the other coordinated case on appeal]." This theory is not supported by case authority. The *coordination* of separate complex actions does not mean those cases have been *consolidated* for all purposes. (California Rules of Court, rule 3.541.)[4] "A review of applicable rules adopted by the Judicial Council indicates that the procedures which may be utilized by the coordinating judge are flexible indeed." (*McGhan Medical Corp. v. Superior Court* (1992) 11 Cal.App.4th 804, 812 ["it is the intent of the Judicial Council to vest in the coordinating judge whatever great breadth of discretion may be necessary and appropriate to ease the transition through the judicial system of the logjam of cases which gives rise to coordination"].) Plaintiffs cite

---

[4] All further references to the rules are to the California Rules of Court.

16

to no case authority, and we found none, holding they were required to abandon a claim to continue litigating their case while a similar issue was being challenged on appeal in a separate but coordinated case brought by different parties.

Plaintiffs' reliance on *Holland v. Dave Altman's R.V. Center* (1990) 222 Cal.App.3d 477, 483 (*Holland*), is misplaced. That case involved a single plaintiff injured by a vehicle owned by one defendant, but driven by different defendant who was a Swiss citizen. (*Id.* at p. 479.) The plaintiff appealed the trial court's decision to grant the Swiss citizen's motion to quash service, and while the appeal was pending, the court continued the trial date. (*Id.* at pp. 479-480.) Unlike the case before us, the appeal originated from a ruling made in the plaintiff's case. The plaintiff's trial was not stayed pending an appeal from an order quashing service in a different case.

The court in *Holland* determined the "legal effect" of the court's order "was to stay, rather than to continue the trial" for the duration of the appeal. (*Holland, supra,* 222 Cal.App.3d at p. 482.) It held the time was excluded from the five-year period because it was impracticable for plaintiff to proceed to trial. (*Ibid.*) The court explained that if plaintiff had continued with the case by dismissing the Swiss citizen from the case, she would be indicating an intent to abandon the pending appeal. (*Id.* at p. 483.) Severing the action against him from the action against defendant "ran the risk of duplicative proceedings . . . [a] waste of time and resources." (*Ibid.*) "Thus, the failure to sever does not demonstrate any lack of diligence on [plaintiff's] part, or otherwise rebut the impracticality of proceeding to trial during the pendency of the . . . appeal. [Citation.]" (*Ibid.*) Relevant to our case, the *Holland* court noted a plaintiff cannot be expected to defy the trial court's unambiguous order that the case was not to proceed to trial until the pending appeal had been decided. (*Id.* at p. 484.)

Here, Judge Dunning's order did not unambiguously state the case would not proceed to trial until appeals in the other lawsuits were finalized. To the contrary, she did not specify any reason for continuing the partial stay and she modified the order to

17

allow Plaintiffs to proceed by amending their complaint. Unlike the trial judge in the *Holland* case, Judge Dunning specifically authorized Plaintiffs to move forward with their case. Moreover, as noted by the trial court (Judge Wilson) who dismissed this case, there was nothing stopping Plaintiffs from protesting continuation of the partial stay, from advocating for a complete stay, or from requesting a stipulation or order saying the time waiting for the appeals would toll the five-year statute. Their claims to be powerless to proceed with (or advocate for a complete stay of) the proceedings is simply not supported by the record.

We are also not persuaded by Plaintiffs' argument they needed either responsive pleadings or additional discovery to amend their complaints. These arguments fail due to lack of specificity. Plaintiffs fail to explain what exactly was missing that could be gained by further discovery. They also do not describe what additional benefit would be achieved from receiving responsive pleading.

Plaintiffs' insinuation they were unclear about potential deficiencies with the original complaint is belied by the record. It is undisputed their counsel, Catanzarite, also represented most of the plaintiffs appealing Judge Andler's demurrer rulings. (See, e.g., *Gee, supra,* G050844) Having considered numerous appeals arising from these coordinated actions, this court is very familiar with the similarly drafted pleadings based on comparable fact patterns and nearly identical statute of limitations legal issues. (*Ibid.*) Like this court, Plaintiffs' counsel must also be well aware of the numerous defects and deficiencies pointed out in multiple demurrers, motions to strike, and ruling sustaining those demurrers and granting the motions. For example, Judge Andler ruled that in addition to claims being barred by the statute of limitations, some of the fraud-based

18

causes of action failed because the pleading used overbroad and general terminology.[5] (*Ibid.*) We can reasonably presume Judge Dunning was also cognizant of the pleading deficiencies that were not dependent on the outcome of the appeals. Her order, viewed in this context, was not designed to create "an idle sidestep" but rather to give the Plaintiffs the opportunity to amend their claims knowing there was a need for greater specificity.

There is one more reason we conclude the contention lacks merit. As aptly pointed out by Defendants: "[Plaintiffs] do not identify anywhere they informed the [c]ourt during any partial stay that they were prevented from [amending the complaint] absent discovery necessary to 'augment the pleading with additional facts.' [Citation.]" Defendants aptly note Plaintiffs could have sought an exception to the partial stay, or asked the court to permit the discovery necessary to amend the complaint.

For all the above reasons, we conclude Plaintiffs' vague assertion they needed discovery to amend the complaint, or a demurrer to comprehend the defects, is simply not persuasive. Similarly, Plaintiffs' contention their only option for amending the complaint was to abandon issues overlapping those considered by the appellate court lacks merit. As stated, Plaintiffs, unlike the plaintiff in *Holland,* could continue litigating

---

[5] It was not a secret Judge Andler repeatedly notified the parties about how they needed to amend the pleadings. As noted in our prior opinion, the court issued the following warning: "'It is an understatement to say that much time and effort has been spent by counsel and the court discussing these pleadings, in some case for years, in order to determine if a pleading could be crafted which could survive a challenge. Each version of each complaint generated demurrers and motions to strike. Although recognizing the valid concerns expressed by a number of defendants, leave to amend was previously granted in recognition of the great liberality the law provides for amending pleadings. There were specific discussions as to what the concerns were, and counsel for plaintiffs had asserted, at oral argument, that the deficiencies could and would be cured. . . . [P]laintiffs were put on notice as to the need to plead with greater specificity regarding the roles played by each of the defendants and their alleged acts or omissions. [¶] The court previously commented that plaintiffs appear in some of the pleadings to simply sue anyone and everyone who had anything to do with the transactions, regardless of how remote the participation of some of the defendants might be.'" (*Gee, supra,* G050844.)

their lawsuit because the appeals at issue were tangential. On a final note, we find it telling that although this appeal was filed after Plaintiffs drafted their first, second, third, and fourth amended complaints (all filed after the stay was lifted), Plaintiffs did not discuss what was added or changed with each new version. If, as Plaintiffs now claim, additional discovery was crucial before the pleadings could be augmented with additional facts, they had every opportunity to show us specific examples in any one of the amended versions of the complaint. Their failure to demonstrate their argument, in the easiest possible way, speaks volumes about their lack of reasonable diligence in bringing this case to trial and the merits of this appeal.

C. *The First Period—Brief Automatic Stay During Coordination Proceedings*

The court determined that during the First Period there was a brief tolling of the five-year period for 106 days from (1) the date assigning the coordination petition to the order granting the petition (from November 26, 2014, to February 4, 2015), and (2) from the order granting the petition to the order assigning the coordination trial judge (from February 4, 2015, to March 12, 2013.) Plaintiffs maintain this ruling is inconsistent with the court's prior determination there was only partial stay during the entire First Period. We find no inconsistency. As we explain in more detail below, the California Rules of Court, not the trial court, created an automatic and complete stay for the brief time it took from granting the petition to assigning a coordination trial judge. (Rule 3.529.) Moreover, the effect of a partial stay can vary, and the court has the *discretion* to determine at what point during a partial stay it might be impossible, impractical, or futile to bring the action to trial. (*Bruns, supra,* 51 Cal.4th at p. 726.)

1. *Automatic Stay After Petition Granted*

Rule 3.529(b) provides, "When an *order granting* coordination is filed in an included action, all further proceedings in that action are *automatically stayed*, except as directed by the coordination trial judge or by the coordination motion judge under (c)." (Italics added.)

20

Rule 3.529(c) clarifies the limited scope of a coordination motion judge's authority as follows: "After a petition for coordination has been granted and before a coordination trial judge has been assigned, the coordination motion judge may for good cause make any appropriate order as the ends of justice may require *but may not commence a trial or enter judgment* in any included action. Good cause includes a showing of an urgent need for judicial action to preserve the rights of a party pending assignment of a coordination trial judge." (Italics added.)

"The intent of the Judicial Council is to maintain the status quo of included actions by continuing the automatic stay only so long as it takes to have a coordination trial judge assigned. Once that assignment is made, the automatic stay terminates and the judge is obligated to move the coordinated cases to trial as quickly as possible." (1A Cal. Jur.3d (2022) Actions § 198, fn. omitted; *Bank of America v. Superior Court* (1988) 200 Cal.App.3d 1000, 1009 (*Bank of America*).)

Here, the trial court correctly determined that while the partial stay was in effect, the California Rules of Court imposed a brief automatic stay from the date of the order granting coordination until assignment of the coordination trial judge. In this case, the coordination motion judge granted the petition on February 4, 2015. This is the start date of the automatic stay.

The end date is complicated by the fact Plaintiffs filed a peremptory challenge to the first assigned coordination judge. On March 2, 2015, the Orange County superior court appointed Judge Gail A. Andler, but later granted Plaintiffs' peremptory challenge pursuant to section 170.6 on March 13, 2015. The coordinated cases were reassigned to Judge Kim Dunning "effective" that same day.

We conclude, the automatic stay lasted 26 days, ending on March 2, 2015. (*Bank of America, supra,* 200 Cal.App.3d at p. 1010 [automatic stay under rule 1529(b) (currently rule 3.529) "does not toll the five-year period beyond the date of assignment of

21

the coordination trial judge"].)  The action was not automatically stayed during the time (11 days) the parties litigated the peremptory challenge.

However, the trial court had the discretion to include in its tolling calculations the 11 additional days if continuing the action during the peremptory challenge proceedings would have been impossible, impractical, or futile pursuant to section 583.340, subdivision (c).  As mentioned above, that provision authorizes the trial court to exclude periods when a partial stay is in place, when prosecuting the action was impractical.  (*Bruns, supra,* 51 Cal.4th at p. 726.)  Neither party claims the court abused its discretion by including an additional 11 days in its tolling calculations.  We conclude the ruling was a reasonable exercise of its discretion.  Accordingly, the trial court correctly determined the five years to bring the action was tolled both by an automatic stay (26 days) and due to time litigating the peremptory challenge (11 days) for a total of 37 days.[6]

2. *Partial Stay When Petition was Pending*

We calculated there were 70 days between the time the coordination petition was filed to when it was granted (November 26, 2014, to February 4, 2015).  The parties had the option of requesting a complete stay as part of the petition requesting coordination (Rule 3.515(a)).  Alternatively, the trial court had the option of granting a Rule 3.515 stay on its own motion.  Neither event happened in this case.

There is a split of authority over whether, in the absence of a rule 3.515 stay, the parties can take advantage of section 583.340, subdivision (c)'s tolling provisions.  The reason for the dispute is because courts have conflicting interpretations

---

[6]     We recognize our calculation credits Plaintiffs with one more day than the trial court.  The court's ruling stated Judge Dunning was assigned on March 12, but our review of the trial court's docket showed the assignment was March 13.  Our record does not contain the relevant order, and therefore, we cannot confirm which date is correct. This one day discrepancy makes no difference to the outcome, but we point it out to appease the philomathes.

22

of rule 3.515(h),(i), and (j), which describe the "effect of a stay" order compared to the "effect of its absence."

Rule 3.515(h) is straightforward: "Unless otherwise specified in the order, a stay order suspends all proceedings in the action to which it applies. A stay order may be limited by its terms to specified proceedings, orders, motions, or other phases of the action to which the order applies."

Rule 3.515(j) provides: "The time during which any stay of proceedings is in effect under the rules in this chapter must not be included in determining whether the action stayed should be dismissed for lack of prosecution under chapter 1.5 (§ 583.110 et seq.) of title 8 of part 2 of the Code of Civil Procedure." In other words, if a coordination hearing judge grants a rule 3.515 stay, the passage of time tolls any lack of prosecution dismissal statutes.

It is less clear what happens if a stay is not requested or granted. Rule 3.515(i) explains the "[e]ffect of [the] absence of [a] stay order." "In the absence of a stay order, a court receiving an order assigning a coordination motion judge may continue to exercise jurisdiction over the included action for purposes of all pretrial and discovery proceedings, but *no trial may be commenced and no judgment may be entered in that action* unless trial of the action had commenced before the assignment of the coordination motion judge." (Rule 3.515 (i), italics added.)

Some courts have determined that because a trial cannot be commenced, even in the absence of a rule 3.515 stay, the time must be tolled because it would have been "impossible, impracticable, or futile" under section 583.340, subdivision (c), to bring the case to trial. (*Bank of America, supra,* 200 Cal.App.3d at p. 1011 [parties conceded tolling during coordination proceedings]; *Fidelity National Home Warranty Co. Cases* (2020) 46 Cal.App.5th 812, 842.) The trial court cited to this legal authority in holding the time must be included in its tolling calculations.

The court in *Gordon's Cabinet Shop v. State Comp. Ins. Fund* (1999) 74 Cal.App.4th 33, 39, reached a different conclusion. It observed that coordination proceeding stay orders expressly provide "the five-year statute [is tolled] *when a stay is granted*." (*Id.* at p. 40.) "By implication, no tolling should be imputed to coordination proceedings unless a stay is granted. No stay was ever issued in connection with [the] petition for coordination. [Rule 3.515(i)] by its terms applies only '[i]n the *absence* of a stay order.' (Italics added.) It would be absurd to hold that the five-year statute is tolled only when a stay has been granted, but nevertheless to hold that the statute is also tolled under a provision that applies only in the absence of a stay order." (*Ibid.*)

We need not weigh in on this dispute because if we assume, for the sake of argument, the trial court had the discretion to toll the five-year statute in the absence of a rule 3.515 stay, the additional 70 days does not help Plaintiffs. The court dismissed the case nearly two years after the five-year deadline passed. From start to finish, the coordination proceedings took less than four months.

D. *No Additional Time Tolled During the Partial Stay*

To briefly recap, we have determined there was a partial stay in effect, during the First Period and Second Period, lasting a total of 1,253 days (approximately 3.4 years). Ordinarily, when calculating the time by which a case must be brought to trial, the court need not exclude time when there was a partial stay. (§ 583.310.) As discussed above, we affirm the trial court's decision to toll the five-year deadline in which to prosecute an action by 107 days, which represented the time needed to coordinate the Moody Action with the similar Orange County cases.

The trial court determined there were no grounds to toll any additional days during the partial stay. "We . . . review a trial court's tolling decision for abuse of discretion, giving it the usual deference accorded by that standard, and reversing only if no reasonable basis exists for the trial court's decision. [Citation.] In the absence of an abuse of discretion, we will affirm even if we would have ruled differently. [Citation.]"

24

(*Tanguilig v. Neiman Marcus Group, Inc.* (2018) 22 Cal.App.5th 313, 324.) Our review is appropriately limited "because trial courts are best equipped to evaluate the complicated factual matters that could support . . . a finding [of impossibility, impracticability, or futility]." (*Id.* at p. 324, citing *Bruns, supra,* 51 Cal.4th at p. 731.)

In this case, the court's findings were reasonable and supported by the record. It offered the following explanation: "[T]he [five]-year period was only tolled from November 26, 2014, to March 13, 2015, extending the [five]-year period to May 20, 2019, unless Plaintiffs establish impossibility, impracticability, and futility. Plaintiffs have not met their burden. [¶] Plaintiffs argue the stay was necessary to avoid duplicative proceedings, promote judicial efficiency and was agreed to by Defendants. Plaintiffs also argue that matter was impacted by the many appeals in the related [coordinated] actions, and the bankruptcy of a co-defendant, but they do not explain how any of these events warrant application of any of the exceptions. Nor do Plaintiffs establish reasonable diligence. For example, there is no explanation why Plaintiffs elected not to file a [FAC] until November 27, 2017, when they had permission to seek leave to file a [FAC] and/or file one as of right as early as April 2015."

The court correctly noted Catanzarite's January 2017 status report referenced the pending appeals, but failed to identify "how or why the appeal[s] affected Plaintiffs' ability to file the [FAC]" or why it took 10 months to file it. It added: "There is no evidence of any effort Plaintiffs took to engage the [Defendants] in resolving issues with the complaint, to address case management or discovery issues, or to agree to a plan on how to move this case along once the discovery stay was lifted. [¶] Nothing in the record suggests Plaintiffs protested the partial stays or did anything else to seek to affirmatively prosecute their claims during the periods of the partial stays."

The court stated it understood the determination of whether "'the subdivision (c) exception applies [will] require[] a fact-sensitive inquiry and depends "on the obstacles faced by the plaintiff in prosecuting the action and the Plaintiff's exercise of

25

reasonable diligence in overcoming those obstacles." [Citation.]'" It explained, "Here, nothing in the record demonstrates that any of the partial stays were entered over Plaintiffs' objection, or that Plaintiffs affirmatively sought to set aside and/or modify any of those partial stays. [¶] Finally, again as pertinent from *Gaines*: 'While attempts to work cooperatively are to be lauded, they do not absolve litigants from the obligation to prosecute claims within the statutory guidelines. Established case law advised Gaines to seek an express stipulation from the parties that the agreed-upon postponements would extend the five-year period. [Citation.] Gaines did not do so.' [Citation.] [¶] The Court here finds, based on all the facts before it, that Plaintiffs have not demonstrated a circumstance of impossibility, impracticability, or futility arising from the partial-stay periods. [¶] Defendants' motion to dismiss is accordingly granted . . . ."

We conclude the court's ruling reflects an understanding of the applicable legal principles, and included a fact sensitive inquiry into the circumstances and obstacles faced by these Plaintiffs. The court reasonably concluded Plaintiffs did not meet their burden of proof they acted with reasonable diligence or that there existed the exceptions of impossibility, impracticability, or futility. We have no basis to hold the court abused its discretion in deciding the action was not tolled for over three years.

E. *Neither Section 583.350 nor Emergency Rule 10(a) Help Plaintiffs*

As mentioned earlier, Emergency Rule 10(a) extends the time to bring an action to trial by six months, giving Plaintiff's a deadline of five years and six months. Because we have held the five-year statutory deadline was not extended by impossibility or a complete stay, the six-month extension does not help Plaintiffs. The action commenced on February 3, 2014, and therefore, the last day of the five-year period was February 2, 2019, which was extended six months under Emergency Rule 10(a) resetting the deadline to August 3, 2019. If we add the time tolled during the coordination proceedings, the deadline, at best, extends to the end of 2019. Here, the court did not

26

dismiss this action until over a year later on February 19, 2021. Thus, even with the benefit of the six-month extension of time, the court correctly dismissed the action.

Section 583.350 also does not assist Plaintiffs. It provides, "If the time within which an action must be brought to trial pursuant to this article is tolled or otherwise extended pursuant to statute with the result that at the end of the period of tolling or extension less than six months remain[]" then the time to bring the action to trial is extended six months after the tolling or extension. The statute is inapt here because the time to bring this action to trial did not expire within the last six months remaining. The Plaintiffs were in the midst of drafting their fourth amended complaint during the statutory deadline in late 2019. The action was dismissed over one year later.

DISPOSITION

The judgment is affirmed. Respondents shall recover their costs on appeal.

O'LEARY, P. J.

WE CONCUR:

BEDSWORTH, J.

MOORE, J.

27